

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 38th Floor*
*New York, New York 10278*

April 10, 2025

**BY EMAIL & REQUEST TO BE FILED UNDER SEAL**
The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

  Re: *United States v. Aamer Abdulaziz*, S19 17 Cr. 630 (ER)

Dear Judge Ramos:

  The Government respectfully submits this letter in advance of the April 17, 2025, sentencing of defendant Aamer Abdulaziz Ahmed Salman ("Abdulaziz" or the "defendant"). The Probation Department accurately calculates the defendant's Guidelines range as 60 months' imprisonment (the "Guidelines Range"), and recommends a below-Guidelines sentence of 48 months' imprisonment. The defendant has requested a sentence "substantially below" the Guidelines Range. Considering all of the Section 3553(a) factors, the Government respectfully submits that the 48-month sentence recommended by the Probation Department is appropriate.

  **I. The Offense Conduct**

  **A. The OneCoin Scheme**

  Having presided over the trial against Mark Scott and having sentenced six defendants who also participated in various facets of the OneCoin scheme, the Court is intimately familiar with the OneCoin scheme. For this reason, the Government does not summarize the details of the scheme here, and instead relies on the description of the scheme as set forth in the Government's sentencing submission for Scott. *See* Dkt. No. 607. For ease of reference, the Government has included a brief summary of the OneCoin scheme below.

  Co-defendants Ruja Ignatova ("Ruja") and Sebastian Greenwood conceived of and orchestrated a multibillion-dollar fraud scheme by which they defrauded millions of individual OneCoin investors (the "OneCoin Fraud Scheme"). Ruja and Greenwood co-founded OneCoin Ltd. ("OneCoin") in 2014. OneCoin was based in Sofia, Bulgaria. OneCoin marketed and sold a fraudulent cryptocurrency by the same name. Between the fourth quarter of 2014 and the fourth quarter of 2016 alone, the scheme took in more than $4 billion from at least 3.5 million victims.

While Ruja and Greenwood marketed OneCoin as a legitimate cryptocurrency like Bitcoin and deliberately drew the comparison between the two cryptocurrencies through their representations to investors and their marketing materials, OneCoin had no actual value and was conceived of by Ruja and Greenwood as a fraud from day one. The misrepresentations made by Greenwood and others to OneCoin investors were legion, and the cryptocurrency was worthless. Among other things, OneCoin lied to its members about how its cryptocurrency was valued, claiming that the price of OneCoin was based on market supply and demand, when in fact OneCoin itself arbitrarily set the value of the coin without regard to market forces. The purported value of a OneCoin grew steadily from €0.50 to approximately €29.95 per coin, as of in or about January 2019. The purported price of OneCoins never decreased in value.

As banks around the world began to catch on to the OneCoin scheme, banks became unwilling to handle OneCoin's money. Among other problems, OneCoin could not open bank accounts in the name of "OneCoin," and instead had to hide the origin of the funds in those accounts, and the purpose of the transfers out of those accounts. Furthermore, OneCoin had its bank accounts frozen. In response to this problem, Ruja and other principals at OneCoin relied on an international network of money launderers.

### B. The Defendant's Role in the Scheme

Abdulaziz was one of OneCoin's primary money launderers from at least in or about 2017 through 2018. In that role, Abdulaziz helped to organize the laundering of hundreds of millions of dollars of OneCoin fraud proceeds through his purported investment fund, Phoenix Fund Investments. Abdulaziz, who purported to be an investment fund manager, opened an investment fund account in the name of Phoenix Fund Investments (the "Phoenix Account") in the United Arab Emirates, and Scott transferred approximately € 185 million of OneCoin proceeds from the Bank of Ireland to the Phoenix Account. In account opening documents that Abdulaziz completed for the Phoenix Account, Abdulaziz made no mention of OneCoin. In addition to laundering OneCoin fraud proceeds, Abdulaziz also stole and misappropriated tens of millions of dollars of OneCoin proceeds for himself, spending the money on, among other things, expensive racehorses. Evidence, including text messages and email communications, show that Abdulaziz had frequent communications with other high-level participants in the OneCoin scheme—namely, Ruja, Greenwood, Scott, and other OneCoin employees—regarding transfers of OneCoin scheme proceeds.

Some of the funds received into the Phoenix Account were subsequently sent back to bank accounts in Sofia, Bulgaria. These transfers were for the benefit of Ruja and were intended to disguise the transfer of proceeds from the OneCoin scheme as legitimate transactions, *e.g.*, "acquisition of real estate" and a "loan." Abdulaziz also lied about the origin of the funds that funded Phoenix Fund Investments, and his connection to OneCoin.

Abdulaziz also assisted OneCoin in two additional primary ways: (1) he helped OneCoin to prepare for a purported initial coin offering ("ICO") that was marketed under the name "Golden Gate Investments" ("GGI"); and (2) he assisted OneCoin with legal problems that arose in India. The GGI ICO was developed and marketed by OneCoin. Abdulaziz undertook efforts to assist OneCoin with the launch of GGI, including by sending a "new license" for GGI to an employee of Emirates NBD bank, with a request to expedite opening a bank account. Abdulaziz also agreed,

at Dilkinska's request, to try to assist in resolving ongoing legal issues OneCoin was facing in India.

Abdulaziz misappropriated and effectively stole tens of millions of the OneCoin fraud proceeds that Scott had sent into the Phoenix Account. He used those stolen fraud proceeds to buy expensive racehorses and to set up the Phoenix Thoroughbred companies, all while concealing that the source of funds was OneCoin.

## II. Procedural History and Other Sentences Imposed

Abdulaziz was indicted under seal in September 2020. That same month, Abdulaziz's UAE-based counsel contacted the U.S. Attorney's Office to discuss the possibility of Abdulaziz voluntarily traveling to the U.S. to face charges and, potentially, to cooperate with the Government. Abdulaziz engaged U.S. counsel, and in August 2021, Abdulaziz traveled from Dubai to the U.S. to voluntarily surrender, and subsequently met with the Government several times. On August 15, 2024, Abdulaziz waived indictment and pleaded guilty to a superseding information, which charged him conspiracy to commit money laundering, in violation of 18 U.S.C. § 371.

Abdulaziz is the eighth defendant to be sentenced in the case:

- On October 19, 2021, David Pike was sentenced to a term of probation of two years. Pike's Guidelines range was 6 to 12 months.

- On February 16, 2023, Gilbert Armenta was sentenced to a term of imprisonment of 60 months. Armenta's Guidelines range was 1,200 months. Armenta also entered into a cooperation agreement with the Government, but he committed additional crimes after entering into his cooperation agreement and the Government did not provide him with a Section 5K1.1 letter.

- On September 12, 2023, Karl Sebastian Greenwood, a cofounder of the OneCoin scheme, was sentenced to a term of imprisonment of 240 months. Greenwood's Guidelines range was 720 months.

- On January 25, 2024, Mark Scott was sentenced to a term of imprisonment of 120 months. Scott's Guidelines range was 600 months.

- On March 7, 2024, Konstantin Ignatov was sentenced to a term of imprisonment of time served. Ignatov's Guidelines range was 1,080 months. Ignatov entered into a cooperation agreement with the Government, but he committed perjury during his testimony at the trial against Mark Scott (after entering into his cooperation agreement) and the Government did not provide him with a Section 5K1.1 letter.

- On April 3, 2024, Irina Dilkinska was sentenced to a term of imprisonment of 48 months. Dilkinska's Guidelines range was 120 months.

- On October 18, 2024, William Morro was sentenced to a one-year term of probation. Morro's Guidelines range was zero to six months.

Probation recommends a sentence of 48 months' imprisonment, and the defendant requests a sentence "substantially below the Guidelines and the five-year maximum sentence." (Def. Mem. 47.) The defendant is a citizen of Bahrain who lives in Dubai and does not have status in the United States.

### III. The Sentencing Guidelines Range

The Probation Department calculated the Guidelines range as follows: the base offense level is eight; 26 levels are added because the value of the laundered funds is between $150,000,000 and $250,000,000; three levels are subtracted because the defendant accepted responsibility; and two levels are subtracted because the defendant is a zero-point offender. The total offense level is 29.

The defendant's criminal history category is I. A total offense level of 29 and a criminal history category of I results in a Guidelines range of 87 to 108 months' imprisonment, but that range is then reduced to the statutory maximum of 60 months.

### IV. The Appropriate Sentence

#### A. Applicable Law

While advisory following *United States v. Booker*, 543 U.S. 220 (2005), the Guidelines remain "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). That is because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Id.* at 46. For that reason, "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006).

In imposing a sentence, the Court must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)–(7). *See Gall,* 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)   to afford adequate deterrence to criminal conduct;

  (C)  to protect the public from further crimes of the defendant;
  (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. The Court Should Impose a Below-Guidelines Sentence of 48 Months' Imprisonment

  The extensive scale of the OneCoin scheme, Abdulaziz's critical role in that scheme, and his apparent continued personal use of the substantial fraud proceeds he derived drive the Government's sentencing recommendation of a sentence of 48 months' imprisonment.

  As to the offense conduct, as the Court well knows, OneCoin was an egregious fraud that took billions of dollars from millions of victims worldwide. Abdulaziz was one of OneCoin's key money launderers, who laundered more than $150 million dollars in fraud proceeds through his purported investment fund in the UAE while concealing any affiliation between the funds and OneCoin. In addition to laundering OneCoin proceeds, Abdulaziz provided general assistance to OneCoin in connection with its anticipated purported ICO, and he assisted OneCoin with legal problems it faced in India. Finally, Abdulaziz stole tens of millions of dollars of OneCoin proceeds for his own personal benefit, including to purchase expensive items like racehorses.

  The Government agrees with the Probation Department's assessment of the mitigating and aggravating circumstances that are present. Abdulaziz has no criminal history, and he has obligations to his family, who are located in Dubai. He did, however, profit substantially from his role in the OneCoin scheme, and he has taken no steps to forfeit any of those funds to the Government. The OneCoin scheme preyed on vulnerable victims throughout the world; victims who are unlikely to be made whole for the substantial financial hardships they suffered.

  As to relative culpability compared to previously sentenced defendants, the Government views Abdulaziz as far less culpable than Greenwood and less culpable than Dilkinska, but more culpable than Morro. The Government views Abdulaziz as similarly situated to the other money launderer defendants, Armenta and Scott, although Scott abused his position as an attorney and violated his ethical obligations in laundering or facilitating the laundering of hundreds of millions of dollars. Like Armenta, Abdulaziz made efforts to cooperate, although Armenta's cooperation was extraordinary by comparison. And while Abdulaziz's attempted assistance was less timely and substantially less useful that Armenta's, it is notable that Abdulaziz took the rare step of traveling from a country with no extradition treaty to voluntarily face the charges against him.

  A significant aggravating factor that warrants the recommended 48 months' imprisonment is Abdulaziz's unexplained wealth and his continued extravagant spending. The Probation Department highlighted Abdulaziz's lack of transparency regarding his purportedly "legitimate" source of income (reported to be approximately $490,000 per year), the fact that Abdulaziz still has not returned any of the tens of millions of fraud proceeds that he personally derived (despite claiming to want to cooperate with the Government and while he reportedly spends more than approximately $60,000 per month to support his and his family's luxurious lifestyle, which includes employing a maid in Dubai), and described Abdulaziz as "not entirely forthcoming in

providing information concerning his income and finances" during the presentence investigation. (*See* PSR at ¶¶ 128-29, pp. 43-44.)

Indeed, in April 2021—seven months *after* Abdulaziz's U.K. counsel contacted this Office about possible voluntary surrender and cooperation—it was reported that Abdulaziz's Phoenix Thoroughbreds (which was founded with the tens of millions of dollars in OneCoin proceeds that Abdulaziz stole) spent $11.6 million on 19 racehorses at an auction.[1]  And while the Government does not doubt that Abdulaziz's "extended loneliness" during his years in the U.S. has taken a toll (Def. Ex. 1; Def. Mem. 40), we also note that he has been living in a furnished duplex apartment that costs approximately $10,000 per month.  (PSR ¶ 110.)  Abdulaziz's lack of transparency regarding his finances and his continued extravagant spending undermine his claim that he has fully accepted responsibility.  The recommended term of imprisonment is warranted for both specific and general deterrence.

In sum, a sentence of 48 months' imprisonment is sufficient, but not greater than necessary, to account for the offense conduct, afford adequate deterrence, and promote respect for the law and provide just punishment for the offense.  Abdulaziz's role in the scheme was serious and calls for such a term of imprisonment, and for the forfeiture of the substantial fraud proceeds that Abdulaziz appears to continue to use to fund his lavish lifestyle.

### V.    Restitution and Forfeiture

Due to the difficulties that would be associated with fashioning a restitution order in this case, the Government respectfully submits that the Court should not enter a restitution order against the defendant.

Title 18, United States Code, Section 3663A(c)(3) provides that restitution shall not be applied in certain types of cases such as the instant case (*i.e.*, a fraud case), if the Court determines that:

> (A) the number of identifiable victims is so large as to make restitution impracticable; or
>
> (B) determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

The Government submits that both factors are met here.  Between the fourth quarter of 2014 and the fourth quarter of 2016 alone, the scheme took in more than $4 billion from at least 3.5 million victims.  Further, the defendant and his co-conspirators targeted OneCoin investors throughout the world.  Calculating investor losses would require identifying each of these millions of investors and determining how much they each invested.  Although a small number of investors

---

[1] *See* https://www.afr.com/companies/sport/magic-millions-money-laundering-and-a-4b-crypto-scam-20210415-p57jeo (last visited April 10, 2025).

have come forward and identified themselves to the Government, the vast majority have not. Moreover, obtaining this information would be even more difficult in this case given the passage of time and the absence of accurate contact information for most of the victims.

For these reasons, the Government respectfully submits that it would be, as a practical matter, impossible to fashion a restitution order in this case and, in any event, the need to do so does not outweigh the complication and prolongation of the sentencing process. Therefore, the Government respectfully requests that the Court decline to enter a restitution order, as the Court did in the sentencings of Armenta and Greenwood.

As to forfeiture, the defendant has agreed to forfeit a sum of money equal to $227,958,703.24, which represents the proceeds traceable to the commission of his offenses. A preliminary forfeiture order was entered by the Court at the time of the plea.

## VI.  Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence of 48 months' imprisonment.

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney

by: /s/
Kevin Mead
Juliana Murray
Assistant United States Attorneys
(212) 637-2211/-2314

cc: Marc Agnifilo, Esq. (by Email)
Zach Intrater, Esq. (by Email)
Teny Geragos, Esq. (by Email)
David Gelfand, Esq. (by Email)
Jazmin Trotman, U.S. Probation Officer (by Email)